CSM LEGAL, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------X

MARVIN ESCALANTE, NELSON MURILLO, and VICTORINO ANTONIO VICTORIA, *individually and on behalf of others similarly situated,*

*Plaintiffs*,

-against-

THE NEW HK INC. (D/B/A HUMMUS KITCHEN), SHARON HOOTA, and MAOR ONONO,

*Defendants.*

---------------------------------------------------------X

**COMPLAINT**

**COLLECTIVE ACTION UNDER 29 U.S.C. § 216(b)**

**ECF Case**

Plaintiffs Marvin Escalante, Nelson Murillo, and Victorino Antonio Victoria, individually and on behalf of others similarly situated (collectively, "Plaintiffs"), by and through their attorneys, CSM Legal, P.C., upon their knowledge and belief, and as against The New HK Inc. (d/b/a Hummus Kitchen), ("Defendant Corporation"), Sharon Hoota and Maor Onono, ("Individual Defendants"), (collectively, "Defendants"), allege as follows:

## NATURE OF ACTION

1. Plaintiffs are former employees of Defendants The New HK Inc. (d/b/a Hummus Kitchen), Sharon Hoota, and Maor Onono.

2. Defendants own, operate, or control a Mediterranean Restaurant, located at 1613 2nd Ave New York, NY 10028 under the name "Hummus Kitchen".

3. Upon information and belief, individual Defendants Sharon Hoota and Maor Onono, serve or served as owners, managers, principals, or agents of Defendant Corporation and, through this corporate entity, operate or operated the restaurant as a joint or unified enterprise.

4. Plaintiffs were employed as delivery workers at the restaurant located at 1613 2nd Ave New York, NY 10028.

5. Plaintiffs were ostensibly employed as delivery workers. However, they were required to spend a considerable part of their work day performing non-tipped duties, including but not limited to cleaning the fridge, cleaning the restaurant, sweeping, mopping, transferring inventory, preparing food, filling in as a waiter/busboy, and restocking items (hereafter the "non-tipped duties").

6. At all times relevant to this Complaint, Plaintiffs worked for Defendants without appropriate minimum wage compensation for the hours that they worked.

7. Rather, Defendants failed to maintain accurate recordkeeping of the hours worked and failed to pay Plaintiffs appropriately for any hours worked, including at the straight rate of pay.

8. Furthermore, Defendants failed to pay Plaintiffs wages on a timely basis.

9. Defendants employed and accounted for Plaintiffs as delivery workers in their payroll, but in actuality their duties required a significant amount of time spent performing the non-tipped duties alleged above.

10. Regardless, at all relevant times, Defendants paid Plaintiffs at a rate that was lower than the required tip-credit rate.

11. However, under both the FLSA and NYLL, Defendants were not entitled to take a tip credit because Plaintiffs' non-tipped duties exceeded 20% of each workday, or 2 hours per day, whichever is less in each day. 12 N.Y. C.R.R. §146.

12. Upon information and belief, Defendants employed the policy and practice of disguising Plaintiffs' actual duties in payroll records by designating them as delivery workers instead of non-tipped employees. This allowed Defendants to avoid paying Plaintiffs at the minimum wage rate and enabled them to pay them at the tip-credit rate (which they still failed to do).

13. In addition, Defendants maintained a policy and practice of unlawfully appropriating Plaintiffs' and other tipped employees' tips and made unlawful deductions from these Plaintiffs' and other tipped employees' wages.

14. Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

15. At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work without providing the minimum wage compensation required by federal and state law and regulations.

16. Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq*. and 650 *et seq.* (the "NYLL"), including applicable liquidated damages, interest, attorneys' fees and costs.

17. Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

18. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

19. Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate a Mediterranean Restaurant located in this district. Further, Plaintiffs were employed by Defendants in this district.

## PARTIES

### *Plaintiffs*

20. Plaintiff Marvin Escalante ("Plaintiff Escalante" or "Mr. Escalante") is an adult individual residing in New York County, New York.

21. Plaintiff Escalante was employed by Defendants at Hummus Kitchen from approximately June 2018 until on or about November 2021.

22. Plaintiff Nelson Murillo ("Plaintiff Murillo" or "Mr. Murillo") is an adult individual residing in New York County, New York.

23. Plaintiff Murillo was employed by Defendants at Hummus Kitchen from approximately July 2018 until on or about October 2021.

24. Plaintiff Victorino Antonio Victoria ("Plaintiff Victoria" or "Mr. Victoria") is an adult individual residing in Bronx County, New York.

25. Plaintiff Victoria was employed by Defendants at Hummus Kitchen from approximately January 2017 until on or about March 19, 2022.

### *Defendants*

26. At all relevant times, Defendants owned, operated, or controlled a Mediterranean Restaurant, located at 1613 2nd Ave New York, NY 10028 under the name "Hummus Kitchen".

27. Upon information and belief, The New HK Inc. (d/b/a Hummus Kitchen) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 1613 2nd Ave New York, NY 10028.

28. Defendant Sharon Hoota is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Sharon Hoota is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Sharon Hoota possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

29. Defendant Maor Onono is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Maor Onono is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Maor Onono possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

30. Defendants operate a Mediterranean Restaurant located in the Upper East Side section of Manhattan in New York City.

31. Individual Defendants, Sharon Hoota and Maor Onono, possess operational control over Defendant Corporation, possess ownership interests in Defendant Corporation, and control significant functions of Defendant Corporation.

32. Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

33. Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

34. Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

35. In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

36. Upon information and belief, Individual Defendants Sharon Hoota and Maor Onono operate Defendant Corporation as either an alter ego of themselves and/or failed to operate Defendant Corporation as an entity legally separate and apart from themselves, by among other things:

a) failing to adhere to the corporate formalities necessary to operate Defendant Corporation as a Corporation,

b) defectively forming or maintaining the corporate entity of Defendant Corporation, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

c) transferring assets and debts freely as between all Defendants,

d) operating Defendant Corporation for their own benefit as the sole or majority shareholders,

e) operating Defendant Corporation for their own benefit and maintaining control over this corporation as a closed Corporation,

f) intermingling assets and debts of their own with Defendant Corporation,

g) diminishing and/or transferring assets of Defendant Corporation to avoid full liability as necessary to protect their own interests, and

h) Other actions evincing a failure to adhere to the corporate form.

37. At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

38. In each year from 2017 to 2022, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

39. In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the restaurant on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiffs*

40. Plaintiffs are former employees of Defendants who ostensibly were employed as delivery workers. However, they spent over 20% of each shift performing the non-tipped duties described above.

41. Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Marvin Escalante*

42. Plaintiff Escalante was employed by Defendants from approximately June 2018 until on or about November 2021.

43. Defendants ostensibly employed Plaintiff Escalante as a delivery worker.

44. However, Plaintiff Escalante was also required to spend a significant portion of his work day performing the non-tipped duties described above.

45. Although Plaintiff Escalante ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

46. Plaintiff Escalante regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

47. Plaintiff Escalante's work duties required neither discretion nor independent judgment.

48. From approximately June 2018 until on or about December 2019, Plaintiff Escalante worked from approximately 5:00 p.m. until on or about 11:00 p.m. to 11:30 p.m., Mondays through Saturdays (typically 36 to 39 hours per week).

49. From approximately January 2020 until on or about December 2020, Plaintiff Escalante worked from approximately 4:00 p.m. until on or about 9:30 p.m. to 10:30 p.m., Mondays through Saturdays (39 hours per week).

50. From approximately January 2021 until on or about November 2021, Plaintiff Escalante worked from approximately 4:00 p.m. until on or about 9:00 p.m. to 10:00 p.m., 3 days a

week and from approximately 6:00 p.m. until on or about 10:00 p.m. to 11:00 p.m., 3 days a week (typically 33 hours per week).

51. Throughout his employment, Defendants paid Plaintiff Escalante his wages by check.

52. From approximately June 2018 until on or about December 2019, Defendants paid Plaintiff Escalante $8.50 per hour.

53. From approximately January 2020 until on or about December 2020, Defendants paid Plaintiff Escalante $10.00 per hour.

54. From approximately January 2021 until on or about November 2021, Defendants paid Plaintiff Escalante $12.50 per hour.

55. Defendants never granted Plaintiff Escalante any breaks or meal periods of any kind.

56. Plaintiff Escalante was never notified by Defendants that his tips were being included as an offset for wages.

57. Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Escalante's wages.

58. Defendants withheld a portion of Plaintiff Escalante's tips; specifically, Defendants pocketed 60% of earned tips was taken from Plaintiff and $15-$20 would be deducted from credit card tips.

59. Plaintiff Escalante was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

60. Although Plaintiff Escalante was required to keep track of his time, Defendants required him to record fewer hours than he actually worked. As a result, Plaintiff Escalante was not compensated for all of the hours that he worked.

61. On a number of occasions, Defendants required Plaintiff Escalante to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay.

62. Defendants took improper and illegal deductions of Plaintiff Escalante's wages; specifically, Defendants deducted a portion from Plaintiff Escalante's weekly wages for errors with deliveries.

63. No notification, either in the form of posted notices or other means, was ever given to Plaintiff Escalante regarding overtime and wages under the FLSA and NYLL.

64. Defendants did not provide Plaintiff Escalante an accurate statement of wages, as required by NYLL 195(3).

65. In fact, Defendants adjusted Plaintiff Escalante's paystubs so that they reflected inaccurate wages and hours worked.

66. Defendants did not give any notice to Plaintiff Escalante, in English and in Spanish (Plaintiff Escalante's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

67. Defendants required Plaintiff Escalante to purchase "tools of the trade" with his own funds—including one bicycle and one bicycle chain.

*Plaintiff Nelson Murillo*

68. Plaintiff Murillo was employed by Defendants from approximately July 2018 until on or about October 2021.

69. Defendants ostensibly employed Plaintiff Murillo as a delivery worker.

70. However, Plaintiff Murillo was also required to spend a significant portion of his work day performing the non-tipped duties described above.

71. Although Plaintiff Murillo ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

72. Plaintiff Murillo regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

73. Plaintiff Murillo's work duties required neither discretion nor independent judgment.

74. From approximately July 2018 until on or about April 2020, Plaintiff Murillo worked from approximately 5:00 p.m. until on or about 11:00 p.m. to 1:00 a.m., 5 days a week (typically 30 to 40 hours per week).

75. From approximately June 2020 until on or about November 2020, Plaintiff Murillo worked from approximately 5:00 p.m. until on or about 11:00 p.m. to 1:00 a.m., 5 days a week (typically 30 to 40 hours per week).

76. From approximately December 2020 until on or about January 2021, Plaintiff Murillo worked from approximately 9:00 a.m. until on or about 8:00 p.m., 4 days a week (typically 44 hours per week).

77. From approximately February 2021 until on or about October 2021, Plaintiff Murillo worked from approximately 6:00 p.m. until on or about 11:00 p.m., 2 days a week and from approximately 5:00 p.m. until on or about 11:00 p.m., 3 days a week (typically 28 hours per week).

78. Throughout his employment, Defendants paid Plaintiff Murillo his wages by check.

79. From approximately July 2018 until on or about December 2018, Defendants paid Plaintiff Murillo $11.00 per hour.

80. From approximately January 2019 until on or about October 2021, Defendants paid Plaintiff Murillo $12.50 per hour.

81. Defendants never granted Plaintiff Murillo any breaks or meal periods of any kind.

82. Plaintiff Murillo was never notified by Defendants that his tips were being included as an offset for wages.

83. Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Murillo's wages.

84. Defendants withheld a portion of Plaintiff Murillo's tips; specifically, Defendants pocketed a percentage of credit card tips.

85. Although Plaintiff Murillo was required to keep track of his time, Defendants required him to record fewer hours than he actually worked or would even take out a whole day of work. As a result, Plaintiff Murillo was not compensated for all of the hours that he worked.

86. On a number of occasions, Defendants required Plaintiff Murillo to sign a document, the contents of which he was not allowed to review in detail.

87. Defendants took improper and illegal deductions of Plaintiff Murillo's wages; specifically, Defendants deducted one days' worth of wages from Plaintiff Murillo's weekly wages whenever Plaintiff Murillo was unable to work, but had another coworker punch in for him. In fact, Defendants required Plaintiff Murillo to compensate another coworker for his coverage.

88. No notification, either in the form of posted notices or other means, was ever given to Plaintiff Murillo regarding overtime and wages under the FLSA and NYLL.

89. Defendants did not provide Plaintiff Murillo an accurate statement of wages, as required by NYLL 195(3).

90. In fact, Defendants adjusted Plaintiff Murillo's paystubs so that they reflected inaccurate wages and hours worked.

91. Defendants did not give any notice to Plaintiff Murillo, in English and in Spanish (Plaintiff Murillo's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

92. Defendants required Plaintiff Murillo to purchase "tools of the trade" with his own funds—including two electric bicycles, one bicycle motor, and four bike locks.

*Plaintiff Victorino Antonio Victoria*

93. Plaintiff Victoria was employed by Defendants from approximately January 2017 until on or about March 19, 2022.

94. Defendants ostensibly employed Plaintiff Victoria as a delivery worker.

95. However, Plaintiff Victoria was also required to spend a significant portion of his work day performing the non-tipped duties described above.

96. Although Plaintiff Victoria ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

97. Plaintiff Victoria regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

98. Plaintiff Victoria's work duties required neither discretion nor independent judgment.

99. From approximately January 2017 until on or about December 31, 2017, Plaintiff Victoria worked from approximately 4:00 p.m. until on or about 11:00 p.m., 5 days a week (typically 35 hours per week).

100. From approximately January 2018 until on or about December 31, 2018, Plaintiff Victoria worked from approximately 6:00 p.m. until on or about 11:00 p.m., 5 days a week (typically 25 hours per week).

101. From approximately January 2019 until on or about March 12, 2020, Plaintiff Victoria worked from approximately 4:00 p.m. until on or about 10:30 p.m., 5 days a week (typically 32.5 hours per week).

102. From approximately April, 2020 until on or about November 2021, Plaintiff Victoria worked from approximately 5:00 p.m. until on or about 11:00 p.m., 5 days a week (typically 30 hours per week).

103. From approximately December 1, 2021 until on or about December 31,. 2021, Plaintiff Victoria worked from approximately 6:00 p.m. until on or about 11:00 p.m., 4 days a week (typically 20 hours per week).

104. From approximately January 2022 until on or about March 19, 2022, Plaintiff Victoria worked from approximately 4:00 p.m. until on or about 11:00 p.m., 4 days a week (typically 28 hours per week).

105. Throughout his employment, Defendants paid Plaintiff Victoria his wages by check.

106. From approximately January 2017 until on or about December 31, 2017, Defendants paid Plaintiff Victoria $8.50.

107. From approximately January 2018 until on or about March 19, 2022, Defendants paid Plaintiff Victoria $12.50.

108. Plaintiff Victoria is owed one weeks' worth of wages worked during approximately February 2021. Additionally, Plaintiff Victoria is owed 6 hours' worth of wages for his last day of work as well as $89 made from tips.

109. Plaintiff Victoria's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

110. For example, Defendants required Plaintiff Victoria to work an additional 30 minutes past his scheduled departure time every day. Additionally, Defendants required Plaintiff Victoria to work an additional 2 hours before his scheduled arrival time once a week and did not pay him for the additional time he worked.

111. Defendants never granted Plaintiff Victoria any breaks or meal periods of any kind.

112. Plaintiff Victoria was never notified by Defendants that his tips were being included as an offset for wages.

113. Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Victoria's wages.

114. Although Plaintiff Victoria was required to keep track of his time, Defendants manipulated his hours that resulted in a reduction of actual hours worked.

115. No notification, either in the form of posted notices or other means, was ever given to Plaintiff Victoria regarding overtime and wages under the FLSA and NYLL.

116. Defendants did not provide Plaintiff Victoria an accurate statement of wages, as required by NYLL 195(3).

117. In fact, Defendants adjusted Plaintiff Victoria's paystubs so that they reflected inaccurate wages and hours worked.

118. Defendants did not give any notice to Plaintiff Victoria, in English and in Spanish (Plaintiff Victoria's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

119. Defendants required Plaintiff Victoria to purchase "tools of the trade" with his own funds—including one bike, one helmet, and one vest.

*Defendants' General Employment Practices*

120. At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work without paying them appropriate minimum wage as required by federal and state laws.

121. Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked.

122. Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, and resulted in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

123. Defendants habitually required Plaintiffs to work additional hours beyond their regular shifts but did not provide them with any additional compensation.

124. Defendants required Plaintiffs and all other delivery workers to perform general non-tipped tasks in addition to their primary duties as delivery workers.

125. These Plaintiffs and all similarly situated employees, ostensibly were employed as tipped employees by Defendants, although their actual duties included a significant amount of time spent performing the non-tipped duties outlined above.

126. The Plaintiffs' duties were not incidental to their occupation as tipped workers , but instead constituted entirely unrelated general restaurant work with duties, including the non-tipped duties described above.

127. These Plaintiffs and all other tipped workers were paid at a rate that was lower than the lower tip-credit rate by Defendants.

128. However, under state law, Defendants were not entitled to a tip credit because the tipped worker's and these Plaintiffs' non-tipped duties exceeded 20% of each workday (or 2 hours a day, whichever is less) (12 N.Y.C.R.R. § 146).

129. New York State regulations provide that an employee cannot be classified as a tipped employee on any day in which he or she has been assigned to work in an occupation in which tips are not customarily received. (12 N.Y.C.R.R. §§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

130. In violation of federal and state law as codified above, Defendants classified these Plaintiffs and other tipped workers as tipped employees, and paid them at a rate that was lower than the lower tip-credit rate when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

131. Defendants failed to inform Plaintiffs who received tips that Defendants intended to take a deduction against Plaintiffs' earned wages for tip income, as required by the NYLL before any deduction may be taken.

132. Defendants failed to inform Plaintiffs who received tips, that their tips were being credited towards the payment of the minimum wage.

133. Defendants failed to maintain a record of tips earned by Plaintiffs who worked as delivery workers for the tips they received. Defendants' time keeping system did not reflect the actual hours that Plaintiff Escalante worked.

134. As part of its regular business practice, Defendants intentionally, willfully, and repeatedly harmed Plaintiffs who received tips, by engaging in a pattern, practice, and/or policy of

violating the FLSA and the NYLL. This policy and pattern or practice included depriving delivery workers of a portion of the tips earned during the course of employment.

135. Defendants unlawfully misappropriated charges purported to be gratuities received by tipped Plaintiffs, and other tipped employees, in violation of New York Labor Law § 196-d (2007).

136. Under the FLSA and NYLL, in order to be eligible for a "tip credit," employers of tipped employees must either allow employees to keep all the tips that they receive or forgo the tip credit and pay them the full hourly minimum wage.

137. Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records.

138. On a number of occasions, Defendants required Plaintiffs to sign a document the contents of which they were not allowed to review in detail. Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

139. Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

140. Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

141. Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated former workers.

142. Defendants failed to provide Plaintiffs and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

143. Defendants failed to provide Plaintiffs and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

**FLSA COLLECTIVE ACTION CLAIMS**

144. Plaintiffs bring their FLSA minimum wage and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

145. At all relevant times, Plaintiffs and other members of the FLSA Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been

subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage and willfully failing to keep records under the FLSA.

146. The claims of Plaintiffs stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION

## VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA

147. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

148. At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d). Defendants had the power to hire and fire Plaintiffs (and the FLSA Class Members), controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

149. At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

150. Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

151. Defendants failed to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

152. Defendants' failure to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

153. Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

**SECOND CAUSE OF ACTION**

**VIOLATION OF THE NEW YORK MINIMUM WAGE ACT**

154. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

155. At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of their employment, and determined the rates and methods of any compensation in exchange for their employment.

156. Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs less than the minimum wage.

157. Defendants' failure to pay Plaintiffs the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

158. Plaintiffs were damaged in an amount to be determined at trial.

**THIRD CAUSE OF ACTION**

**VIOLATION OF THE NOTICE AND RECORDKEEPING**

**REQUIREMENTS OF THE NEW YORK LABOR LAW**

159. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

160. Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

161. Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## FOURTH CAUSE OF ACTION

## VIOLATION OF THE WAGE STATEMENT PROVISIONS OF THE NEW YORK LABOR LAW

162. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

163. With each payment of wages, Defendants failed to provide Plaintiffs with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

164. Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## FIFTH CAUSE OF ACTION

## RECOVERY OF EQUIPMENT COSTS

165. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

166. Defendants required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, further reducing their wages in violation of the FLSA and NYLL. 29 U.S.C. § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

167. Plaintiffs were damaged in an amount to be determined at trial.

**SIXTH CAUSE OF ACTION**

**UNLAWFUL DEDUCTIONS FROM TIPS IN VIOLATION**

**OF THE NEW YORK LABOR LAW**

168. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

169. At all relevant times, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

170. New York State Labor Law § 196-d prohibits any employer or his agents, including owners and managers, from demanding or accepting, directly or indirectly, any part of the gratuities received by an employee, or retaining any part of a gratuity, or any charge purported to be a gratuity, for an employee.

171. Defendants unlawfully misappropriated a portion of Plaintiffs' tips that were received from customers.

172. Defendants knowingly and intentionally retained a portion of Plaintiffs' tips in violations of the NYLL and supporting Department of Labor Regulations.

Plaintiffs were damaged in an amount to be determined at trial.

**SEVENTH CAUSE OF ACTION**

**UNLAWFUL DEDUCTIONS FROM WAGES IN VIOLATION**

**OF THE NEW YORK LABOR LAW**

173. Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

174. At all relevant times, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

175. Defendants made unlawful deductions from Plaintiffs' wages; specifically, Defendants deducted one days' worth of wages from Plaintiff Murillo's weekly wages whenever

Plaintiff Murillo was unable to work; Defendants required Plaintiff Murillo to compensate another coworker for his coverage.

176. The deductions made from Plaintiffs' wages were not authorized or required by law.

177. Through their knowing and intentional efforts to take unauthorized deductions from Plaintiffs' wages, Defendants willfully violated NYLL, Article 6, §§ 190 *et seq.*, and supporting New York State regulations.

Plaintiffs were damaged in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION

## VIOLATION OF THE TIMELY PAYMENT PROVISIONS OF THE NEW YORK LABOR LAW

178. Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

179. Defendants did not pay Plaintiffs on a regular weekly basis, in violation of NYLL §191.

180. Defendants are liable to each Plaintiff in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a) Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b) Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(c) Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(d) Declaring that Defendants' violations of the provisions of the FLSA were willful as to Plaintiffs and the FLSA Class members;

(e) Awarding Plaintiffs and the FLSA Class members damages for the amount of unpaid minimum wage and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(f) Awarding Plaintiffs and the FLSA Class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum wage, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(g) Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(h) Declaring that Defendants violated the timely payment provisions of the NYLL as to Plaintiffs;

(i) Awarding Plaintiff liquated damages in an amount equal to one hundred percent (100%) of the total amount of wages shown to be untimely, as well as reasonable attorneys' fees and costs, and pre-judgment and post-judgment interests pursuant to NYLL §191(1)(a), 198;

(j) Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages and any deductions or credits

taken against wages;

(k) Declaring that Defendants' violations of the provisions of the NYLL were willful as to Plaintiffs;

(l) Awarding Plaintiffs damages for the amount of unpaid minimum wage, and for any improper deductions or credits taken against wages as applicable

(m) Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(n) Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(o) Awarding Plaintiffs and the FLSA Class members pre-judgment and post-judgment interest as applicable;

(p) Awarding Plaintiffs and the FLSA Class members the expenses incurred in this action, including costs and attorneys' fees;

(q) Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(r) All such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated: New York, New York

June 27, 2022

CSM LEGAL, P.C

By: /s/ Catalina Sojo, Esq.
Catalina Sojo [CS-5779517]
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

# CSM Legal, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

catalina@csmlegal.com

April 18, 2022

BY HAND

TO: Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre: Nelson Murillo

Legal Representative / Abogado: CSM Legal, P.C.

Signature / Firma: ______________________

Date / Fecha: 18 de abril 2022

# CSM Legal, P.C.
Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

catalina@csmlegal.com


April 18, 2022

BY HAND

TO: Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre: Victorino Antonio Victoria

Legal Representative / Abogado: CSM Legal, P.C.

Signature / Firma: [signature]

Date / Fecha: 18 Abril 2022

# CSM Legal, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

catalina@csmlegal.com


April 25, 2022

BY HAND

TO: Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre: Marvin Escalante

Legal Representative / Abogado: CSM Legal, P.C.

Signature / Firma: ______________________

Date / Fecha: 25 de abril 2022